**UNITED STATES of America**

v.

**Dean Anthony BECKFORD, Claude Gerald Dennis, Leonel Romeo Cazaco and Richard Anthony Thomas.**

**Criminal Nos. 3:96CR66–01, 3:96CR66–05, 3:96CR66–06 and 3:96CR66–07.**

United States District Court, E.D. Virginia, Richmond Division.

May 6, 1997.

---

See also 964 F.Supp. 1010.

David Novak, Stephen Miller, Andrew McBridge, Asst. U.S. Attys., Richmond, VA, for Government.

Gerald T. Zerkin, Robert J. Wagner, Richmond, VA, for Dean Anthony Beckford.

John C. Jones, Quinton, VA, Scott Brettschneider, Kew Gardens, NY, for Claude Gerald Dennis.

Reginald M. Barley, Richmond, VA, Cary B. Bowen, Bowen & Bowen, Richmond, VA, for Leonel Romeo Cazaco.

David P. Baugh, Richmond, VA, Elizabeth D. Scher, Morchower, Luxton & Whaley, Richmond, VA, for Richard Anthony Thomas.

## MEMORANDUM OPINION

PAYNE, District Judge.

Defendants Dean Anthony Beckford, Claude Gerald Dennis, Leonel Romeo Cazaco and Richard Anthony Thomas are charged with intentional murder in furtherance of a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(e). Pursuant to 21 U.S.C. § 848(h), the Government notified each defendant that it intends to seek a penalty of death in the event of conviction. As required, the notice sets forth the statutory and non-statutory aggravating factors upon which the Government will rely as the basis for urging imposition of the death penalty. One of the non-statutory aggravating factors delineated is the likelihood that the defendants will engage in dangerous conduct in the future. To prove this factor, the Government intends to introduce, at the penalty phase (if there is one), evidence of the defendants' unadjudicated criminal conduct. The issue for decision is the standard of proof to which the Government should be held to in proving the unadjudicated acts.[1]

## DISCUSSION

Section 848(j) of Title 21, United States Code, provides that: "[t]he burden of establishing the existence of any aggravating factor is on the Government, and is not satisfied unless *established beyond a reasonable doubt.*" (emphasis added). The defendants urge that, in addition to this statutory requirement, any unadjudicated criminal conduct which the Government intends to offer *in support of an aggravating factor* must be barred from the jury's consideration unless the Court first finds, and thereafter the jury, that the Government has proven that conduct by clear and convincing evidence.[2]

The defendants' position is best understood by considering a concrete example. For instance, in its notice of intent to seek a sentence of death, the Government asserted that it intends to establish Dean Beckford's "future dangerousness" as a non-statutory aggravating factor. To that end, the Government will attempt to show "the probability that the defendant would commit criminal acts of violence constituting a continuing threat to society, as evidenced by some or all of the following:"

(a) On or about January 1, 1989, in Queens County, New York, the defendant DEAN ANTHONY BECKFORD assisted in disposing of the body of George Chang after he was shot and killed by Phillip Pierre;

\* \* \* \* \* \*

(c) Throughout the Fall of 1989, in Richmond, Virginia, the defendant DEAN ANTHONY BECKFORD jointly possessed with the defendant CLAUDE GERALD DENNIS a Glock 9mm semi-automatic pistol with two 17–round magazines and a 9mm Baretta semiautomatic pistol with a seventeen round magazine, which firearms the defendants . . . used on an "as needed" basis to protect and further their drug trafficking enterprise.

*See Amended Notice of Intent to Seek a Sentence of Death* (April 25, 1997). Considered in perspective of this notice, the defendants' motion would require the Court, at the pre-trial stage, and the jury, at the penalty phase, to find by clear and convincing evi-

---

1. In its earlier notice of intent to seek a sentence of death, the Government had noticed an intent to use unadjudicated criminal conduct in and of itself as a non-statutory aggravating factor. However, the Amended Notice filed by the Government shows that the Government will rely on unadjudicated conduct only to support a finding of "future dangerousness."

2. The motion was filed by Dean Beckford. Richard Thomas, Leonel Cazaco, and Claude Dennis moved to adopt the motion. The Motions to Adopt are granted.

dence that Beckford committed each of the acts, (a) and (c), offered by the Government in support of the future dangerousness aggravating factor.[3] For the reasons which follow, the Court declines to follow that course.

## A. Unadjudicated Criminal Conduct is not Per Se Inadmissible

■ The Supreme Court has not held specifically that unadjudicated criminal conduct can be introduced in the sentencing phase of a capital trial. However, on at least four occasions, two Justices strenuously have urged the Court to resolve that serious constitutional question because it was a recurring one which had prompted conflicting decisions among the states. The same two Justices also voiced doubt that admitting unadjudicated conduct at the sentencing phase of a capital trial would be consistent with the heightened reliability required by the Eighth and Fourteenth Amendments. *See Williams v. Lynaugh,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987) (Marshall, J., joined by Brennan, J. dissenting from denial of certiorari); *Robertson v. California,* 493 U.S. 879, 110 S.Ct. 216, 107 L.Ed.2d 169 (1989) (same) *Devier v. Kemp,* 484 U.S. 948, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987) (same); *Miranda v. California,* 486 U.S. 1038, 108 S.Ct. 2026, 100 L.Ed.2d 613 (1988) (same). Notwithstanding these promptings, the issue remains unsettled by the Supreme Court.

The states are divided over this question. For instance, when the last survey on the topic was completed, as of 1993, six states allowed introduction of unadjudicated conduct almost without limitation; ten states allowed the admission of such evidence pursuant to certain procedural safeguards; and eight states absolutely prohibited the introduction of unadjudicated conduct. See Steven Paul Smith, *Unreliable and Prejudicial: The Use of Extraneous Unadjudicated Offenses in the Penalty Phase of Capital Trials,* 93 Colum.L.Rev. 1249, 1250 (1993).

Arguments for excluding unadjudicated criminal conduct include the following. First, is the concern that the inflammatory nature of the unadjudicated acts might undermine the heightened reliability required in capital cases. Second, is the fundamental premise "that a person is presumed innocent until proven guilty through reliable procedures, including an impartial and untainted jury." *United States v. Davis,* 912 F.Supp. 938, 946 (E.D.La.1996). Under this theory, even if the government must prove the criminal conduct at the penalty phase pursuant to a high burden of proof, a finding of such conduct is unreliable because that phase does not contain the evidentiary rules which govern the guilt phase. Moreover, because the sentencing jury already would have found the defendant guilty of a serious crime (or crimes) in the guilt phase of a capital trial, there exists a perceived risk that the jury may be so biased as to preclude fair evaluation of the unadjudicated criminal conduct introduced in the penalty phase. For these reasons, several states exclude unadjudicated conduct to protect the due process right to an impartial jury. *See Williams v. Lynaugh,* 484 U.S. at 938, 108 S.Ct. at 313–14 (Marshall, J., Brennan, J., dissenting from denial of certiorari). The third reason used to justify exclusion of this sort of evidence is that "the introduction of other alleged crimes [could] entail[ ] a full blown adversarial hearing since the government must present evidence of each separate offense sufficient to prove the [aggravating factor] beyond a reasonable doubt." *Davis,* 912 F.Supp. at 948–49. This, it is asserted, presents the potential for unmanageable mini-trials on collateral issues.

None of these reasons provides a particularly persuasive basis upon which to impose a *per se* ban on the admission of unadjudicated criminal acts in the penalty phase of a capital trial. Each point will be considered in turn. A jury's punishment decision is made more reliable if the jury is fully informed about the crime and the offender. If unadjudicated conduct is relevant and reliable, then the jury should be permitted to consider it. This will underscore, not undermine, the heightened reliability of the sentencing decision. Put differently, heightened reliability does

---

**3.** It is undisputed that the Government would have to prove the non-statutory aggravating fac-

tor, future dangerousness, beyond a reasonable doubt.

not require the exclusion of reliable, relevant evidence simply because the information may prove detrimental to the defendant. To find otherwise, would ignore the interest in ensuring the correct sentence, which ultimately is the goal of the heightened reliability requirements.

Nor does the jury's decision to convict the defendant at the guilt phase mean that its subsequent consideration of the unadjudicated conduct will be tainted in any constitutionally deficient way. To the contrary, the time-tested, constitutionally acceptable, means for assuring fair sentencing by the use of proper procedures and appropriate instructions serves to fully inform the jury as to its obligations and as to the limitations within which it must operate.

Finally, the apprehension of numerous mini-trials respecting the existence of unadjudicated conduct supplies an insufficient basis to wholly exclude such conduct in capital sentencing proceedings. Courts regularly resolve difficult and close questions about the admissibility of evidence and the offering of proofs. The procedures and trial management techniques by which this is usually accomplished will apply even though the proceeding involves capital punishment.

Virginia is one of those states which permits use of unadjudicated conduct in its capital cases. Thus, in the Eastern District of Virginia, the district courts have been called upon, on habeas corpus review, to assess whether such evidence is irrelevant, unreliable, or may be used only if found beyond a reasonable doubt. For instance, in *Breard v. Netherland,* 949 F.Supp. 1255, 1267 (E.D.Va. 1996) (Williams, J.), the Court explained that it previously had rejected claims that the aggravating factor, future dangerousness, is unreliable because it may be proved with unadjudicated criminal acts. Therefore, in *Breard,* the Court found that it was not error for the Virginia trial court to have refused a jury instruction that all alleged unadjudicated offenses must be proved beyond a reasonable doubt. (And, in *Pruett v. Thompson,* 771 F.Supp. 1428, 1442–43 (E.D.Va.1991) (Spencer, J.), *aff'd,* 996 F.2d 1560 (4th Cir.), *cert. denied,* 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993)), the Court rejected a claim that prior unadjudicated criminal conduct is irrelevant to establishing the future dangerousness aggravating factor where there was no indication that the evidence presented (a videotaped confession) was unreliable. This body of decisional law forms a rather firm foundation for rejection of a rule of *per se* inadmissibility.

Numerous other district courts and courts of appeals also have determined that unadjudicated criminal acts are not *per se* inadmissible. *See Hatch v. State,* 58 F.3d 1447, 1465 (10th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); *Devier v. Zant,* 3 F.3d 1445, 1464–65 (11th Cir. 1993), *cert. denied,* 513 U.S. 1161, 115 S.Ct. 1125, 130 L.Ed.2d 1087 (1995); *Richardson v. Johnson,* 864 F.2d 1536, 1541 (11th Cir.), *cert. denied,* 490 U.S. 1114, 109 S.Ct. 3175, 104 L.Ed.2d 1037 (1989); *Milton v. Procunier,* 744 F.2d 1091, 1097 (5th Cir.1984), *cert. denied,* 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); *Williams v. Lynaugh,* 814 F.2d 205, 207–8 (5th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987); *United States v. Davis,* 912 F.Supp. 938, 949 (E.D.La.1996); *United States v. Walker,* 910 F.Supp. 837, 854 (N.D.N.Y. 1995); *United States v. Bradley,* 880 F.Supp. 271, 287 (M.D.Pa.1994). Those decisions provide further support for rejecting the notion that unadjudicated criminal conduct may never be admitted in capital sentencing proceedings. Typical of the rationale is the decision of the Fifth Circuit in *Milton v. Procunier,* 744 F.2d at 1096:

… the inquiry into a defendant's probable future conduct is responsive to the constitutionally rooted concern that the death penalty not be administered in an arbitrary or capricious way. Certainly all "relevant" information ought to be before a jury facing this task. At the same time there remains a long-held reservation about the use of wrongdoing not then being tried. These concerns express our acceptance that a jury suffers the human weakness of blending wrongs—a result inconsistent with our fundamental commitment to charge specificity, jeopardy and due process. But these concerns are addressed by properly applied standards of

relevance and sufficiency of proof. Moreover, the underlying concern that a jury may allow proof that a defendant is a bad person to color its assessment of present guilt is absent when extraneous offenses are received, as here, only at the sentencing phase.

*Id.* For the reasons advanced in the foregoing decisions, the Court finds that unadjudicated criminal conduct is not *per se* inadmissible in the penalty phase of a capital case. Having made this threshold finding, the Court now turns to the defendants' claims.

## B. Unadjudicated Criminal Acts Must be Reliable

■ The defendants' motion calls for decision on the degree of certainty by which the Government must prove the unadjudicated criminal conduct which it intends to offer in support of the future dangerousness aggravating factor. That precise issue has not been decided by this Court. In *Pruett,* the Court recognized only that, if the unadjudicated conduct was 'plainly unreliable' it may be inadmissible as irrelevant to a defendant's future dangerousness. 771 F.Supp. at 1442–43. And, in *Breard,* 949 F.Supp. at 1267, the Court only rejected a claim that a beyond a reasonable doubt standard was required. *Id.*

at 1267.[4] Without guidance from the statute, and in the absence of binding precedent, the resolution of this question necessitates an examination of the policies which underlie death penalty jurisprudence.

■ Two, sometimes-competing, but nonetheless fundamental, constitutional principles define the course of that inquiry. *See Walker,* 910 F.Supp. at 852 ("the issue of unadjudicated criminal conduct lurks squarely at the intersection (read collision) of two powerful but competing principles of death penalty jurisprudence."). The first principle requires courts to assure heightened reliability in capital sentencing because capital punishment is qualitatively different from other punishments.[5] The second principle emphasizes the importance of presenting the sentencing jury with all relevant evidence.[6] This, of course, permits both the defendant and the Government to present evidence relevant to sentencing. *See Smith,* 93 Colum.L.Rev. at 1255–56 (describing *Barefoot v. Estelle,* 463 U.S. 880, 896–99, 103 S.Ct. 3383, 3396–98, 77 L.Ed.2d 1090 (1983)); *Walker,* 910 F.Supp. at 852 (citation omitted).

Absent the reliability factor, the "all relevant evidence" principle clearly would permit the Government to present evidence relating

---

**4.** *See also Turner v. Johnson,* 106 F.3d 1178, 1188–89 (5th Cir.1997) (Rejecting claim that "the Constitution requires that unadjudicated offenses entered into evidence during the punishment phase of … trial be proven beyond a reasonable doubt.") "Although the due process clause requires the state to prove each element of the offense charged beyond a reasonable doubt to secure a conviction, neither this Court nor the Supreme Court has ever held that a similar burden exists regarding the proof of facts adduced during the sentencing phase." *Id.*

**5.** *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976) (Because of the qualitative difference between the death penalty and imprisonment, there is a need for reliability in determining that death is the appropriate punishment in a specific case); *Walker,* 910 F.Supp. at 842 (citations omitted); *see also Davis,* 912 F.Supp. at 947 (citing *Lockett v. Ohio,* 438 U.S. 586, 602–04, 98 S.Ct. 2954, 2963–65, 57 L.Ed.2d 973 (1978); *Ford v. Wainwright,* 477 U.S. 399, 410–11, 106 S.Ct. 2595, 2602–03, 91 L.Ed.2d 335 (1986); *United States v. Pitera,* 795 F.Supp. 546 (E.D.N.Y.1992) ); *Bradley,* 880 F.Supp. at 284 (citing *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Lockett,* 438 U.S. at 604, 98 S.Ct. at

2964–65; *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (plurality opinion); Johnson v. Mississippi, 486 U.S. 578, 590 (1988); see also Smith, 93 Colum.L.Rev. at 1257–1266.

**6.** *See Jurek v. Texas,* 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929 (1976) ("What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine."). "[I]n capital cases the fundamental respect for humanity underlying the Eight Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991 (citations omitted); *see also Bradley,* 880 F.Supp. at 285 (citing *Jurek,* 428 U.S. at 276, 96 S.Ct. at 2958; *Lockett,* 438 U.S. at 608, 98 S.Ct. at 2966–67 (Burger, J., joined by Stewart, Powell, Stevens, JJ.); *Barefoot v. Estelle,* 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983); and *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)).

to the defendants' unadjudicated criminal acts. Indeed, such acts, especially crimes of violence, are "arguably more relevant and probative than any other type of aggravating evidence supporting imposition of the death penalty." *Davis*, 912 F.Supp. at 948; *see also Devier*, 3 F.3d at 1464–65 (quoting *Tucker v. Kemp*, 762 F.2d 1480 (11th Cir.) (*en banc*), vacated, 474 U.S. 1001, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985), reinstated 802 F.2d 1293 (11th Cir.1986), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987)). However, it is Constitutionally essential to assure that the principle of heightened reliability serves as a meaningful limit to the admission of "all relevant evidence" in order to prevent the less stringent concept of relevance from predominating over the cardinal principle of reliability. This necessarily requires a balance to be struck between these two competing doctrines.

■ To effectuate that balance, the proffered unadjudicated criminal conduct may be presented to the jury only if the Court has determined that it meets the threshold test of reliability. This approach accords with that followed by other courts which have examined federal death penalty statutes. *See e.g., Davis*, 912 F.Supp. at 949; *Bradley*, 880 F.Supp. at 287; *Walker*, 910 F.Supp. at 853–54. And, it is fully consistent with the approach of courts which have interpreted state death penalty statutes.[7] To that end, the Court finds here that, before the penalty hearing (should there be one), the Government must present to the Court and to the specific defendants the information which it intends to introduce as unadjudicated conduct.[8] The Court will then determine whether the information is reliable. Only if the Government satisfies that threshold determination will the evidence be presented to the jury.

## C. Section 848 Procedures are Sufficient to Permit the Requisite Reliability Determination

■ It remains, however, to determine the standard of proof the the federal courts which have confronted this question actually have answered it, at least, not as of discernable record. In *Bradley, Davis,* and *Walker*, the district courts asked for further briefing from the parties. *See Davis*, 912 F.Supp. at 949; *Bradley*, 880 F.Supp. at 287; *Walker*, 910 F.Supp. at 853–54. In *Davis*, however, the court made the following, inconclusive suggestions, explaining that:

> An open issue is *what standard to apply in weighing this greater degree of reliability.* Several possible standards come to mind. *One is the standard imposed by the Louisiana supreme court regarding unadjudicated criminal conduct in state penalty phase hearings. The state prosecutor must establish to the satisfaction of the trial judge that (1) the evidence of defendant's connection with the commission of the unrelated crimes is clear and convincing; (2) the proffered evidence is otherwise competent and reliable; and (3) the unrelated crimes have relevance and substantial probative value as to the defendant's character and propensities ... An alternative standard would be that of a post judgment motion for acquittal*—viewing the evidence in the light most favorable to the government, could a reasonable jury find guilt beyond a reasonable doubt, considering the heightened reliability required. *A third possible standard is preponderance of the evidence,* the standard used under the Federal Sentencing Guidelines to determine relevant conduct.

*Davis*, 912 F.Supp. at 949 (citations omitted) (emphasis added).

7. *See e.g. Devier*, 3 F.3d at 1464–65 ("Relevant inquiry for information at sentencing is whether it is reliable") (quoting *Tucker v. Kemp, supra*); *Richardson*, 864 F.2d at 1541 (evidence of past criminal activity may be admitted in sentencing phase of capital trial as long as sentencing judge finds the information reliable), *cert. denied*, 490 U.S. 1114, 109 S.Ct. 3175, 104 L.Ed.2d 1037; *Milton*, 744 F.2d at 1097 (finding no constitutional error in admitting unadjudicated criminal offenses into sentencing phase of capital trial: concerns with evidence are addressed by proper-

ly applied standards of relevance and sufficiency of proof), *cert. denied*, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323; *Pruett*, 771 F.Supp. at 1443 (finding no evidence of unreliability).

8. The Government has agreed to provide that information, but if it had not, the Court would require the presentation to determine what jury instructions to give and to facilitate basic case management.

As noted in *Davis,* state procedures provide a possible source from which to draw a standard for determining the use of unadjudicated conduct. As of 1993, six states, including Virginia, permitted use of unadjudicated offenses in the penalty phase of a capital trial with nothing other than the usual predicates for admitting evidence of that sort. In the ten states which further limited the admissibility of such evidence, some required that the evidence be proved beyond a reasonable doubt, others employed a clear and convincing evidence standard, and one used a balancing test which resembles Fed. R.Evid. 403. *See* Smith, 93 Colum.L.Rev. 1268–1277.

■ Of course, each state statute differs and none exactly replicates Section 848. Hence, state law procedures are of limited utility in assessing the issue presented here under the federal statute. The Supreme Court has been clear that it is "unwilling to say that there is any one right way for a State to set up its capital sentencing scheme." *Spaziano v. Florida,* 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984). Therefore, here, the analysis must begin by examining the terms of Section 848. If Section 848 satisfies the Constitution, then this Court's inquiry must end because any standard of proof imposed beyond the Constitution's commands remains properly within the province of the legislative branch.

**1. The Terms of Section 848 Ensure Reliability and Protect Against Prejudice**

Section 848 contains procedural safeguards designed to meet the Constitutional requirement of heightened reliability in capital cases. For instance, at the penalty phase in a capital trial, the Government must prove aggravating factors beyond a reasonable doubt. No other sentencing scheme in the federal system imposes such a weighty bur-

den. Moreover, Section 848 contains a unanimity requirement: whereas, "... any member of the jury who finds the existence of a mitigating factor may consider such a factor established ... regardless of the number of jurors who concur that the factor has been established", *"[a] finding with respect to any aggravating factor must be unanimous."* 21 U.S.C. § 848(k) (emphasis added). That statutory requirement, alone, imparts a high degree of reliability to the jury's decision as to whether to impose a sentence of death.

Section 848's procedural circumscriptions also eliminate the perceived risk that the jury will recommend a sentence of death solely on the basis of the unadjudicated criminal conduct offered to prove future dangerousness. First, the jury may find nonstatutory aggravating factors (such as future dangerousness) only if it has first determined that the Government has proved *two of the statutory aggravating factors* beyond a reasonable doubt. If the jury does not find the two required factors, the death penalty may not be imposed.[9] This means that, here, the non-statutory aggravating factor, "future dangerousness," which the unadjudicated conduct will be offered to support, may never, by itself, suffice to justify imposition of a death sentence.

■ Second, this case presents no material risk that the jury, properly instructed, will give undue weight to the unadjudicated criminal conduct when it balances the aggravating and mitigating factors pursuant to Section 848(k). This is because the Government has chosen not to offer the unadjudicated criminal conduct as a non-statutory aggravating factor, but only as evidence to support the finding of such a factor. Hence, the jury will be instructed that it may only weigh the "future dangerousness" factor, not the unad-

---

9. The statute provides that: "[i]f one of the aggravating factors set forth in subsection (n)(1) of this section and another of the aggravating factors set forth in paragraphs (2) through (12) of subsection (n) of this section is found to exist, a special finding identifying any other aggravating factors for which notice has been provided under subsection (n)(1)(B) of this section may be re-

turned ... If an aggravating factor set forth in subsection (n)(1) of this section is not found to exist or an aggravating factor set forth in subsection (n)(1) of this section is found to exist but no other aggravating factors set forth in subsection (n) of this section is found to exist, the court shall impose a sentence other than death, authorized by law." 21 U.S.C. § 848(k).

judicated criminal conduct, when balancing aggravating and mitigating factors.[10]

Third, Section 848(j) augments the other statutory safeguards of reliability by insuring that evidence introduced at the penalty phase is relevant, reliable, and not unfairly prejudicial. Indeed, although Section 848(j) permits the introduction of information without regard to admissibility under the rules governing admission of evidence at criminal trials, it does not permit an evidentiary free-for-all that undermines reliability. To the contrary, subsection (j) qualifies the superficially lenient rule of admission by: (1) requiring that any information presented must be *relevant;* and (2) permitting the exclusion of information if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(j). This obligates courts to assure the reliability of information offered at sentencing and to exclude unfairly prejudicial evidence. Any reasonable application of this weighing process will preclude the use of unadjudicated criminal conduct which lacks firm evidentiary support or which only appeals to emotion over reason.

For the foregoing reasons, it is clear that Section 848 creates a structure which precludes unadjudicated criminal conduct from assuming a place other than that to which it is entitled: relevant evidence in the sentencing calculus. Additionally, Section 848(j) establishes a process to be applied to assure that relevant evidence is highly reliable and is not unfairly prejudicial before it can be considered by the jury. The only remaining issue, then, is whether the procedural structures set forth in Section 848 are constitutionally sufficient.

**10.** Section 848 also provides another embedded safeguard because the defendants can attack the jury's findings, and the sufficiency of the jury's findings, on appeal pursuant to Section 848(q). That section provides:

... the court of appeals shall consider the record, the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned under this section.
... The court shall affirm the sentence if it determines that—

### 2. The Federal Rules of Evidence are not Constitutionally Required

Section 848 clearly precludes application of the Federal Rules of Evidence in capital sentencing proceedings. However, the several courts which have been called upon to address constitutional challenges to this preclusion in capital cases, uniformly have upheld the statute. For example, in *United States v. DesAnges,* 921 F.Supp. 349 (W.D.Va.1996), the court held that: "[t]he Constitution does not require the court to apply the rules of evidence at sentencing ... Rather, evidence at sentencing is subject to a due process standard of reliability. If the government offered unconstitutionally unreliable evidence, the court would exclude that evidence under 848(j) because it would 'unfairly prejudice' the defendant." *Id.* at 355 (citation omitted). In *United States v. Pitera,* 795 F.Supp. 546, 566 (E.D.N.Y.1992), the court concluded that "[t]he constitutional mandate is for a sentencing proceeding that ensures heightened reliability ... this can adequately be factored into a consideration of whether proffered evidence is more probative than prejudicial [under Section 848(j) ]." And, in *United States v. Pretlow,* 779 F.Supp. 758, 771 (D.N.J.1991), the court found that the "evidentiary standard set forth in [§ 848(j) ] is adequate to meet constitutional demands". *See also, United States v. Spivey,* 958 F.Supp. 1523 (D.N.M.1997); *Bradley,* 880 F.Supp. at 289–91. The foundation for these decisions is the need to present all relevant evidence about the individual offender in a sentencing phase of a capital trial. One court, in particular, persuasively described how this need, unique to the sentencing phase, harmonizes the application of the Fed-

(A) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and
(B) the information supports the special finding of the existence of every aggravating factor upon which the sentence was based, together with, or the failure to find, any mitigating factors as set forth or allowed in this section
...
21 U.S.C. § 848(q).

eral Rules of Evidence to the guilt phase of a trial but not to the sentencing phase:

> The Federal Rules of Evidence are critical to the conduct of criminal trials to enable "truth [to] be ascertained and proceedings [to be] justly determined." Fed.R.Evid. 102. But the focus of a trial is singular: "whether a defendant is guilty of having engaged in criminal conduct of which he has been specifically accused." *Williams v. New York*, 337 U.S. 241, 246, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337 (1949). An individualized consideration of sentence, by contrast, necessitates a broader inquiry into all aspects of the defendant's life and the crime committed. A simple example best illustrates why the concerns of the two proceedings are not always best served by the Federal Rules of Evidence. At trial, a jury generally cannot consider evidence of a defendant's past criminal conduct in deciding whether he has committed the charged offense. Fed.R.Evid. 404(b). That precise evidence is, however, deemed highly probative at sentencing. See U.S.S.G. § 4A1.1.

*Pitera*, 795 F.Supp. at 564–65.

These decisions also rest on the notion that due process does not require the rather structured trial rules to govern the penalty phase of a capital case, and that Section 848 sufficiently assures the heightened reliability required by the Constitution. Neither these decisions nor the statute provide any basis upon which to conclude that evidence of unadjudicated criminal conduct should be treated differently than other evidence offered to support aggravating and mitigating factors. The only conceivable element which sets unadjudicated criminal conduct apart from other evidence is the increased danger of unfair prejudice associated with unadjudicated offenses.

■ However, the simple fact that unadjudicated conduct may prove harmful to a defendant's case does not lead to the conclusion that such conduct should receive special treatment. Indeed, although prejudicial, unadjudicated acts also have probative value: "the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and rec-

ord of the individual offender ..." *Woodson*, 428 U.S. at 304, 96 S.Ct. at 2991. This means that, in determining punishment, all relevant evidence, whether harmful or helpful, should be considered, provided it is otherwise admissible. Unadjudicated criminal acts, especially violent acts, play a critical role in the individualized sentencing analysis required in capital cases by the Eighth Amendment. Therefore, the appropriate remedy is not to treat unadjudicated criminal conduct differently than the treatment accorded other evidence, but to keep the prejudicial propensity of such evidence in mind in weighing the risk of prejudice against the probative value of such evidence as required by Section 848(j).

### 3. The Supreme Court has Emphasized the Jury's Need to Consider Relevant and Reliable Information

On several occasions, the Supreme Court has emphasized the importance of providing the jury with all relevant and reliable information. For instance, in *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), the Court upheld a Texas death penalty statute, which permitted the jury to consider the likelihood that the defendant would be a continuing threat to society. In so holding, the Supreme Court found that, although the question was difficult, it was not impossible: "[w]hat is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine." *Id.* at 276, 96 S.Ct. at 2958. Moreover, in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), in response to an objection about the wide scope of evidence and argument permitted under a Georgia statute at the penalty phase of a capital trial, the Supreme Court stated:

> We think that the Georgia court wisely has chosen not to impose unnecessary restrictions on the evidence that can be offered at such a hearing and to approve open and far-ranging argument. So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable

for the jury to have as much information before it as possible when it makes the sentencing decision.

*Id.* at 203–4, 96 S.Ct. at 2939.

[10] Moreover, the need to ensure that the jury has access to all relevant and reliable information in deciding whether the Government has proven the "future dangerousness" non-statutory aggravating factor becomes more apparent in consideration of the purposes served by non-statutory aggravating factors. Whereas statutory *aggravating* factors serve to *narrow* the class of persons eligible for the death penalty, *non-statutory aggravating factors* receive *consideration* only after the jury has determined that the defendants belong to that narrow class beyond a reasonable doubt, and, only then, as part of the jury's individualized determination about the character of the defendants and circumstances of the crime. As explained in *Zant v. Stephens,* 462 U.S. 862, 878–79, 103 S.Ct. 2733, 2743–44, 77 L.Ed.2d 235 (1983):

Our cases indicate, then, that statutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty. But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death. What is important at the selection stage is an individualized determination on the basis of the character of the individual and the circumstances of the crime.

*Id.* (noting that Model Penal Code draft ... sets forth lists of aggravating and mitigating circumstances but also provides that the sentencer "shall take into account ... any other facts that it deems relevant ..." ALI Model Penal Code § 210.06 (Proposed Official Draft, 1962)).

Indeed, in *Barfield v. Harris,* 719 F.2d 58, 61 (4th Cir.1983), the Fourth Circuit found that, even though a jury became aware of four prior homicides allegedly committed by a defendant in the guilt phase of a North Carolina capital trial, and even if the jury considered such crimes in the penalty phase in violation of the state's prohibition on the consideration of non-statutory aggravating factors, there was no constitutional error. As stated by the Court, "[a]t most there was an error in the application of state law. Jury consideration of non-statutory aggravating factors, as long a they relate to the character of the defendant and to the crime he committed, does not violate the Constitution of the United States." *Id.* at 61.

### 4. Defining the Standards

■ Based on the foregoing, the Constitution requires no more stringent a standard than that required by Section 848(j) as the predicate for admission of unadjudicated criminal conduct offered to support the future dangerousness non-statutory aggravating factor. The information must be relevant and its probative value must substantially outweigh the danger of unfair prejudice, confusion of the issues, or misleading the jury.

■ With respect to the relevance analysis, the Supreme Court has explicated that " '[r]elevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.' " *Huddleston v. United States,* 485 U.S. 681, 689, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988) (quoting Advisory Committee's Notes on Fed.R.Evid. 401, 28 U.S.C.App., p. 688). Here, because the acts at issue in this motion will be offered by the Government to prove the defendants' "future dangerousness," the unadjudicated criminal acts will be relevant, "only if the jury can reasonably conclude that the act occurred and that the defendant was the actor." *Huddleston,* 485 U.S. at 689, 108 S.Ct. at 1501. In other words, because the relevancy of the acts depends upon the fulfillment of a conditional fact, the Court will examine the evidence, before the penalty phase, to decide "whether the jury could reasonably find the conditional fact ... by a preponderance of the evidence." *Id.* at 690, 108 S.Ct. at 1501.[11] And, of course, the

11. The Government will be required to submit a detailed proffer of the evidence of unadjudicated

unadjudicated criminal conduct must be probative of dangerousness. Conduct that does not meet that criterion would not be relevant under basic evidentiary analysis.

In relying on *Huddleston* to form the basis for the relevance determination under Section 848(j), account must be made for the fact that the issue in *Huddleston* was whether a "district court must itself make a preliminary finding that the Government has proved the 'other act' [evidence under Fed.R.Evid. 404(b) ] by a preponderance of the evidence before it submits the evidence to the jury." *Id.* at 682, 108 S.Ct. at 1497.[12] Notwithstanding the difference in the issue presented to this Court, insofar as the Supreme Court defined the standard for determining the relevance of similar act evidence in *Huddleston*, and insofar as Congress has included a relevance requirement in Section 848(j), the only reason to impose a different standard for determining the relevance of the information sought to be introduced under the circumstances here would be the heightened reliability that must be afforded in a capital trial. However, as explained above, this heightened reliability will be protected by the procedural safeguards provided in Section 848(j) and (k), including: (i) the secondary role which the non-statutory aggravating factor "future dangerousness" will play in the jury's consideration; and (ii) that "future dangerousness" must be proved beyond a reasonable doubt.

Moreover, the Court will consider the need for heightened reliability in conducting the balancing test set forth in Section 848(j). Indeed, although that test is virtually the same as that in Fed.R.Evid. 403, the heightened reliability requirement in capital cases may cause the calculus under the Section 848 test to result in a different balance than

would be struck in the guilt phase of a criminal trial. As explained in *Pitera:*

> This court expects that in many circumstances reference to the Federal Rules of Evidence will be useful in deciding whether information proffered at a capital sentencing hearing is sufficiently reliable to be more probative than prejudicial. The Rules will not, however, be determinative. For example, they tolerate multiple layers of hearsay, without requiring judicial inquiry into reliability. See Fed.R.Evid. 805. The heightened standard applicable to capital sentencing proceedings may, however, demand further indicia of reliability before a court can say that the probative value of any such hearsay outweighs its prejudicial potential.

795 F.Supp. at 565.

In so holding, the Court necessarily rejects both of the defendants, requests: (1) that the Court determine before trial that the unadjudicated criminal conduct will be supported by clear and convincing evidence; and (2) that the jury consider the unadjudicated conduct only after it determines that it is supported by clear and convincing evidence. Each of these concerns will be addressed seriatim.

### 5. The Court Should not Displace the Jury's Role

The Court rejects the defendants' suggestion that it must determine the existence of the unadjudicated conduct by clear and convincing evidence before submission to the jury because that would "superimpose a level of judicial oversight" that the statute does not contemplate. *See Huddleston*, 485 U.S. at 688, 108 S.Ct. at 1500. Moreover, the imposition of a higher standard of proof on the Government—above and beyond a requirement that the evidence be relevant, reli-

---

conduct at the end of the guilt phase of the trial, if the guilt phase necessitates a penalty phase. The defendants will be permitted to brief and argue their opposition to any such conduct keeping in mind that, under Fed.R.Evid. 104(b), "the trial court neither weighs credibility nor makes a finding that the Government has proved the conditional fact by a preponderance of the evidence ..." *Huddleston*, 485 U.S. at 690, 108 S.Ct. at 1501.

**12.** The Court in *Huddleston*, rejected a claim that Fed.R.Evid. 104(a) and 404(b) required a trial court to find, by at least a preponderance of the evidence, that a "similar act" occurred and that the defendant committed the act before admitting the similar act evidence. The Court concluded that "such evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the act." The defendant conceded that a clear and convincing evidence standard was inappropriate.

able and not unfairly prejudicial, confusing or misleading—actually frustrates the objective of giving the jury information that it will need to conduct an individualized culpability assessment. Therefore, as long as the evidence is relevant and reliable and meets the statutory balancing test, the best rule is to admit it, and, as Congress has implicitly instructed, trust the adversary process and the jury, which will be guided by appropriate instructions to place the evidence in proper perspective. As the Supreme Court explained in *Barefoot v. Estelle*, 463 U.S. 880, 898, 103 S.Ct. 3383, 3397, 77 L.Ed.2d 1090 (1983), in finding that a jury may hear testimony by a psychiatrist as to a defendant's dangerousness:

> ... [T]he rules of evidence generally extant at the federal and state levels anticipate that relevant, unprivileged evidence should be admitted and its weight left to the fact finder, who would have the benefit of cross examination and contrary evidence by the opposing party. Psychiatric testimony predicting dangerousness may be countered not only as erroneous in a particular case but as generally so unreliable that it should be ignored. If the jury may make up its mind about future dangerousness unaided by psychiatric testimony, jurors should not be barred from hearing the views of the State's psychiatrists along with opposing views of the defendants' doctors.

> \* \* \* \* \* \*

> We are unconvinced ... at least as of now ... that the adversary process cannot be trusted to sort out the reliable from the unreliable evidence and opinion about future dangerousness, particularly when the convicted felon has the opportunity to present his own side of the case.

*Id.* at 899–901, 103 S.Ct. at 3397–99.

Having notice of the conduct which the Government intends to use, the defendants can cross-examine the Government's witnesses and can offer evidence of their own in response. Considering this, in addition to the ability of the Court to assure that the evidence is reliable, and not unfairly prejudicial, as well as the procedural protections embedded in Section 848, there exists no

valid reason to eschew reliance on the adversary process to perform its time-tested function.

### 6. Imposing Another Standard of Proof on the Jury is Unnecessary and Will Lead to Confusion

 The Court also remains unconvinced by the defendants' supplementary suggestion that the jury should not consider the unadjudicated conduct unless the jury first finds that such conduct has been shown by clear and convincing evidence. Section 848 already contains two different burdens of proof: a preponderance of the evidence standard for mitigating factors and a beyond a reasonable doubt standard for aggravating factors. Injecting yet another burden of proof for consideration by the jury could lead to confusion, and actually could reduce the reliability of the overall decision whether an aggravating factor has been proved beyond a reasonable doubt.

Nevertheless, as an additional method of protection, during the penalty phase hearing, the Court will permit motions at the conclusion of the Government's case, regarding whether the Government has met the standard of relevance, as earlier defined. Thus, in addition to pre-hearing motions, the defendants will have another opportunity to challenge whether the Government has produced sufficient evidence for the jury to reasonably conclude that the unadjudicated criminal act occurred and that the defendant was the actor. If the Government has failed to meet its burden, the unadjudicated conduct would not be relevant, and the evidence must be excluded under the terms of Section 848. In that instance, should it arise, the jury will be instructed to disregard the unadjudicated act in determining whether the Government proved the "future dangerousness" aggravating factor beyond a reasonable doubt. This procedure will avoid confusing the jury with multiple burdens of proof and also will ensure consideration only of relevant and reliable evidence.

Of course, the Government risks the consequence of a mistrial if it offers frail evidence of unadjudicated conduct. That is unlikely to

occur because, under the terms set forth above, the Court will examine admissibility of the evidence before introduction.

For these reasons, there is neither need, nor support, for requiring the clear and convincing evidence standard urged by the defendants.

**D. The Decisions Relied Upon by the Defendants are Inapposite**

The decisions cited by the defendants in support of their motion do not require a contrary result. First, the defendants rely on dicta in *United States v. Watts*, —— U.S. ——, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997). In *Watts*, the Supreme Court held that "a jury's verdict of acquittal does not prevent a sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence." *Id.* at ——, 117 S.Ct. at 638. In so holding, the Supreme Court simply "acknowledge[d] a divergence of opinion among the Circuits as to whether, in extreme circumstances, relevant conduct that would dramatically increase the sentence must be based on clear and convincing evidence." *Id.* at ——, 117 S.Ct. at 637. The Court was cautious to explain that "[t]he cases before us today do not present such exceptional circumstances, and we therefore do not address that issue." *Id.* at —— – ——, 117 S.Ct. at 637–38.

The defendants also rely upon *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In *McMillan*, the Supreme Court considered the constitutionality of a Pennsylvania statute which provided that, for cases in which a person had been convicted of specified felonies, the court could impose a mandatory minimum sentence if it determined by a preponderance of the evidence that the person possessed a firearm during the offense. Ultimately, the Supreme Court upheld the statute against a challenge that the visible possession of a firearm was an element of the crime for which the defendant was being sentenced, and, therefore, required proof beyond a reasonable doubt.

In so holding, the Court remarked that "[t]he statute gives no impression of having been tailored to permit the visible possession finding to be a tail which wags the dog of the substantive offense." *Id.* at 88, 106 S.Ct. at 2417. The Court also rejected the defendant's assertion that due process required that visible possession be proved by at least clear and convincing evidence, finding instead that:

> Like the Court below, we have little difficulty concluding that in this case the preponderance standard satisfies due process … petitioners do riot and could not claim that a sentencing court may never rely on a particular fact in passing sentence without finding that fact by 'clear and convincing evidence.' Sentencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all. Pennsylvania has deemed a particular fact relevant and prescribed a particular burden of proof. We see nothing in Pennsylvania's scheme that would warrant constitutionalizing burdens of proof at sentencing.

*Id.* at 91–92, 106 S.Ct. at 2419 (citations omitted) (sentencing courts have always operated without constitutionally imposed burdens of proof; "embracing petitioners' suggestion that we apply the clear-and-convincing standard here would significantly alter criminal sentencing, for we see no way to distinguish the visible possession finding at issue here from a host of other express or implied findings sentencing judges typically make on the way to passing sentence"). *Id.* at n. 8.

Here, the defendants focus on the "tail which wags the dog" language from *McMillan*, relying upon it and similar language in the decisions of various circuits which have either suggested or decided that, in the context of federal guideline sentencing, "clear and convincing evidence" might be required, either statutorily or constitutionally where relevant conduct would dramatically increase a defendant's sentence.[13] The defendants

---

13. *See e.g., Kinder v. United States*, 504 U.S. 946, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992) (White, J. dissenting from denial of certiorari) (noting

that, although most circuits recognize that at sentencing the preponderance standard ordinarily applies, one Circuit has held and two have

correctly argue that those decisions have either recognized or suggested that a clear and convincing evidence standard should apply to extraordinary departures and enhancements from the Sentencing Guidelines (*i.e.*, those that are quantitatively different). It logically follows, according to the defendants here, that the same clear and convincing evidence standard should apply in this case because a death sentence is *per force* "qualitatively different" than imprisonment. For that reason, the defendants urge that evidence of other criminal conduct upon which the Government relies as part of its effort to *obtain the qualitatively different* sentence of death certainly must be held to the clear and convincing standard, particularly where the evidence is of another homicide.

Those decisions, and the defendants' dependent arguments, do not apply here for several reasons. First, presenting unadjudicated conduct in the sentencing phase of a capital case, at least under the facts here, simply does not amount to a "sentencing tail which wags the offense dog." In this case, the Government has not prosecuted the defendants for minor crimes only to rely upon more serious unadjudicated conduct to dramatically increase their sentences in an effort to escape the beyond a reasonable doubt standard of proof. To the contrary, the defendants here have been charged with crimes, which, because of their serious nature, contemplate the death penalty as a maximum punishment. Murder, of course, classically has been found to justify eligibility for the imposition of a death sentence.

Second, the Government will not introduce the defendants' prior violent acts, in and of themselves, as aggravating factors. Were it to do so, the Government would have to prove such acts beyond a reasonable doubt—a standard which far exceeds the preponderance standard imposed by the Sentencing Guidelines and interpretive case law. Instead, the unadjudicated conduct at issue here serves as secondary evidence used only to support the existence of an aggravating factor—"future dangerousness." Furthermore, the aggravating factor for which the unadjudicated conduct supports, as earlier noted, will itself play a secondary role in the overall decision as to whether to sentence the defendants to death.

Third, the jury's consideration of the unadjudicated conduct here does not resemble the Court's finding of relevant conduct under the Sentencing Guidelines, wherein an increase in sentence may be based solely upon such a finding. To the contrary, for the reasons explained above, under this statute, a jury could never authorize a sentence of death solely on the basis of unadjudicated conduct. Moreover, because the unadjudicated offenses at issue in this motion do not themselves serve as aggravating factors, the jury will not be permitted to weigh them when balancing the aggravating and mitigating factors pursuant to Section 848(k).

Finally, the defendants' suggestion that the Court determine, before trial, that the

suggested that a "clear and convincing evidence standard is appropriate when the relevant conduct offered at sentencing would dramatically increase the sentence"); *United States v. Townley*, 929 F.2d 365, 369 (8th Cir.1991) (finding that, although preponderance of the evidence usually suffices for sentencing determinations, suggesting but not deciding, that in exceptional cases, where a sentencing enhancement factor becomes "a tail which wags the dog of the substantive offenses" the clear and convincing standard might apply); *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir.1991) (en banc) (observing that "the Supreme Court has recognized that due process protects a defendant's interest in fair sentencing, but has emphasized in the same cases that the interest is not defined as a liberty interest in a sentence below the statutory maximum," and leaving for another day the issue of whether a standard of proof higher than the general rule of preponderance of evidence would be necessary where the tail wags the dog of the substantive offense), *cert. denied*, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211 (1992); *United States v. Lombard*, 72 F.3d 170 (1st Cir.1995) (holding that, where mandatory life sentence enhancement was the "tail which wags the dog" of defendant's firearm conviction, which raised constitutional due process issues, the district court had authority to consider a downward departure under section 5K2.0 of the guidelines); *United States v. Kikumura*, 918 F.2d 1084 (3rd Cir.1990) (finding that, although guideline sentencing factors need only be proven by a preponderance of the evidence, where sentencing hearing is the "tail which wags the dog" involving a 12 fold, 330–month departure, the factfinding underlying departure must be established at least by clear and convincing evidence under 18 U.S.C. § 3553).

unadjudicated conduct is supported by clear and convincing evidence, must be distinguished from the case presented in *McMillan,* and those other cases which have applied "the tail which wags the dog" principle which *McMillan* set forth. Under those cases, the Court was acting as final arbiter of the facts and as the sentencing entity. Here, however, the Court will serve only to screen what evidence may be admitted for the jury's consideration to enable the jury to determine whether a sentence of death is justified.

The Supreme Court's decision in *Williams v. New York,* 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), lends further support to the denial of the defendants' motion. In *Williams,* a New York State jury found a defendant guilty of murder and recommended life imprisonment.[14] The murder had been committed during a burglary. The trial judge imposed a sentence of death in light of the evidence presented at trial as well as additional information obtained through the court's probation department. The information which the trial judge found relevant, included approximately thirty other burglaries which had been committed in the area in which the defendant committed the murder. Although the defendant had not been convicted of those offenses, the judge had information that the defendant had confessed to some of them and had been identified as the perpetrator of others. The Supreme Court found that the defendant had not been denied due process, explaining:

> Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind the extent of punishment to be imposed within limits fixed by law.

\*　　\*　　\*　　\*　　\*　　\*

In addition to the historical basis for different evidentiary rules governing trial and sentencing procedures there are sound practical reasons for the distinction. In a trial before verdict the issue is whether a defendant is guilty of having engaged in certain criminal conduct of which he has specifically accused ... A sentencing judge, however, is not confined to the narrow issue of guilt ... highly relevant—if not essential—to his selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to trial.

\*　　\*　　\*　　\*　　\*　　\*

*The due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would hinder if not preclude all courts, state and federal, from making progressive efforts to improve the administration of criminal justice.*

\*　　\*　　\*　　\*　　\*　　\*

It is urged, however, that we should draw a constitutional distinction as to the procedure for obtaining information where the death sentence is imposed. We cannot accept the contention. Leaving a sentencing judge free to avail himself of out of court information in making such a fateful choice of sentences does secure to him a broad discretionary power, one susceptible of abuse. But in considering whether a rigid constitutional barrier should be created, it must be remembered that there is possibility of abuse whenever a judge must choose between life imprisonment and death.

---

**14.** *Williams* is not directly on point because the issue in that case was whether a sentence of death could be based upon information supported by witnesses whom the accused had not confronted nor cross-examined. However, the reasoning of the Supreme Court has application to the present motion.

*Williams,* 337 U.S. at 246–252, 69 S.Ct. at 1083–85. Of course, the validity of *Williams* is not free from doubt because it was decided before *Furman,* 408 U.S. 238, 92 S.Ct. 2726, when much greater discretion in sentencing was acceptable. *See United States v. Pretlow,* 779 F.Supp. 758 (D.N.J.1991). However, *Williams* has been cited by the Supreme Court in several post-*Furman* cases. *Id.*

> For instance, in *Gregg,* 428 U.S. 153, 96 S.Ct. 2909 ... the Court echoed its conclusions in *Williams* when it rejected the defendant's argument that the evidentiary standard employed during sentencing hearings was unduly lenient ...
>
>> So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision. *Id.* at 203–4, 96 S.Ct. at 2939
>
> ...
>
> One year later, in *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Court distinguished, rather than overruled, *Williams* when it held that the failure to disclose to a defendant during a sentence hearing all information upon which a death sentence is ultimately based violates the defendant's due process rights. *Id.* at 355–57, 97 S.Ct. at 1203–04 ... Finally, in *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 ... a plurality of the Court specifically relied on *Williams* to support its holding that a defendant in a death penalty case cannot be precluded from raising any mitigating factors.

*Pretlow,* 779 F.Supp. at 770–71.[15] Most recently, in a non-death penalty case, the Supreme Court relied on *Williams* for the proposition that a sentencing judge should have the fullest information possible about the defendant, including unadjudicated criminal conduct. *See United States v. Watts,* —— U.S. at ——, 117 S.Ct. at 635. Therefore,

neither *Williams* nor many of the principles on which *Williams* was based, have been expressly overruled. Nevertheless, the Court here is reluctant to base its holding solely on *Williams* insofar as that decision may strike a balance which places too much emphasis on individualized consideration and not enough emphasis on reliability. The Court does not decide this issue, however, but notes only that it considers the observations in *Williams* to be informative.

Under the procedures set forth above, the Court is confident that the enhanced reliability required for capital cases will be preserved and that no evidence will be introduced "that is so unduly prejudicial that it [will] render[ ] the trial fundamentally unfair." *Payne,* 501 U.S. at 825, 111 S.Ct. at 2608.

Hence, the defendants' motion is DENIED. The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

**15.** *See also Hatch v. State,* 58 F.3d at 1465 ("The Court has since discredited some of the logic that undergirded its decision in *Williams.* Most notably, in *Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), the Court repudiated *Williams'* assumption that a death penalty is constitutionally indistinguishable from other

forms of punishment ... The Court has not, however, called into question the essence of *Williams'* holding—that a judge's consideration of evidence of unadjudicated crimes in imposing the death sentence does not violate a petitioner's due process rights.")