UNITED STATES of America, Plaintiff,

v.

Odell CORLEY, a/k/a "Nasih Khalil Ra'Id", Defendant.

No. 3:02–CR–116.

United States District Court, N.D. Indiana, Hammond Division.

Dec. 15, 2004.

John T Theis, Law Office of John T Theis, Chicago, IL, Paul Jeffrey Schlesinger, Merrillville, for Randall M. Stewart, Susan L. Collins, Bernard VanWormer, AUSAs.

## ORDER

LOZANO, District Judge.

This matter is before the Court sua sponte.

This order summarizes the procedures used to assess the reliability and admissibility of the evidence of Defendant's unadjudicated criminal conduct that the Government sought to introduce during the penalty phase of this capital case in support of the nonstatutory aggravating factor alleging Defendant's future dangerousness. This order also sets forth the penalty-phase jury instructions and an excerpt from the special verdict forms related to that unadjudicated criminal conduct. Because the Court permitted the Government to introduce evidence of Defendant's then-unproven unadjudicated criminal conduct at the penalty phase of this case, the Court's two prior orders addressing the procedures for the reliability hearing are now being unsealed, with the consent of both parties. Accordingly, the Court's August 30, 2004, and September 17, 2004, sealed orders are **UNSEALED** and the Clerk is **ORDERED** to place copies of those orders in the public file by attaching them to this order as "Appendix A" and "Appendix B," respectively.

The November 21, 2002, superseding indictment charged Defendant with eight counts related to his role as one of five defendants involved in a attempted bank robbery that went horribly wrong on August 27, 2002, in The Pines, a town just outside Michigan City, Indiana. Defendant was charged with: (1) conspiracy to commit bank robbery, in violation of 18 U.S.C. section 371 (Count 1); aggravated attempted bank robbery, in violation of 18 U.S.C. section 2113(d) (Count 2); murder (of Kay Peckat) during an attempted bank robbery, in violation of 18 U.S.C. section 2113(e) (Count 3); possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. section 924(c) (Count 4); firearms murder (of Kay Peckat) during a crime of violence, in violation of 18 U.S.C. sections 924(c) and 924(j)(1) (Count 5); being a felon in possession of a firearm, in violation of 18 U.S.C. section 922(g) (Count 6); murder (of Chandler Simpson) during an attempted bank robbery, in violation of 18 U.S.C. section 2113(e) (Count 9); and firearms murder (of Chandler Simpson) during a crime of violence, in violation of 18 U.S.C. sections 924(c) and 924(j)(1) (Count 10). The superseding indictment includes two notices of special findings summarizing the grand jury's allegations that made Defendant eligible for the death penalty as a result of murdering Kay Peckat (as alleged in Counts 3 and 5) and murdering Chandler Simpson (as alleged in Counts 9 and 10). As one of the statutory aggravating factors listed under section 3592(c) of the Federal Death Penalty Act, the superseding indictment's special findings alleged Defendant created a grave risk of death to a third victim, bank security guard Keith Hill, who was paralyzed during the botched robbery.

The Government filed its notice of intent to seek the death penalty on July 1, 2003, but filed a sealed motion for leave to

amend the notice of intent on March 10, 2004. The Government sought leave to amend the notice after learning that Defendant had been charged with murdering Ms. Wanda McNeil by dousing her with gasoline and setting her on fire in October 1998 in Atlanta, Georgia. Defendant's alleged prior murder initially went unnoticed by the Assistant United States Attorneys prosecuting this case—apparently because Defendant was charged with murder and arson in Atlanta Municipal Court and the records of those charges were not readily available as part of the electronic search federal agents conducted through the National Crime Information Computer system. Making matters worse, the murder and arson charges against Defendant in Atlanta Municipal Court were eventually dismissed after witnesses failed to appear at several hearings. Armed with the knowledge of Defendant's alleged prior murder, the Government sought and received leave of Court to add the following nonstatutory aggravating factor to the notice of intent to seek the death penalty:

> The [D]efendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to others as demonstrated by proof of a continuing pattern of violence, the [D]efendant's low rehabilitative potential, his lack of remorse, and/or his mental condition.

The Court and the parties eventually referred to this nonstatutory aggravating factor as the allegation of Defendant's "future dangerousness." To allow the Government and defense teams to investigate the facts underlying the 1998 murder and arson charges, the Court continued the May 3, 2004, trial setting to September 7, 2004.

Defendant later filed a motion in limine seeking to prohibit introduction of evidence of the Atlanta murder, arguing that the unadjudicated nature of his alleged prior criminal conduct made that evidence inherently unreliable. In recognition of the need to ensure that the evidence of Defendant's involvement in the Atlanta murder was sufficiently reliable to present to the jury during the possible penalty phase, the Court agreed to conduct a hearing, immediately following the return of a guilty verdict on any of the capital counts, to assess the reliability of the Atlanta evidence. *See United States v. Foster,* No. CBC–02–0410, 2004 WL 903921, at *1 (D.Md. Apr.9, 2004) (requiring specific proffer from government to establish reliability and noting that "the taking of testimony" might be necessary before admitting evidence of unadjudicated criminal conduct at penalty phase); *United States v. Gilbert,* 120 F.Supp.2d 147, 153–54 (D.Mass.2000) (explaining that court would consider a "voir dire of the witness" to assess reliability of unadjudicated criminal conduct evidence government sought to introduce at penalty phase); *but see United States v. O'Driscoll,* 250 F.Supp.2d 432, 442 (M.D.Pa.2002) (deciding to admit evidence of unadjudicated criminal conduct during penalty phase after merely reviewing government's evidentiary proffers). The Government strenuously objected to the Court's plan to hold an evidentiary hearing to assess the reliability of the Atlanta evidence. The Court's now-unsealed orders addressing and rejecting the Government's objections are attached to this order as appendices "A" and "B."

On October 6, 2004, the jury found Defendant guilty on all eight counts. The sealed reliability hearing took place the following week, during which eight witnesses testified by videoconference over the course of two days.[1] In preparation

---

1. The Court originally planned to conduct the     reliability hearing the day after the guilty ver-

for the reliability hearing, the Court ordered the parties to brief the issue of what standard of proof the Court should apply in assessing the reliability of the Atlanta evidence. For example, in *United States v. Beckford*, 964 F.Supp. 993 (E.D.Va. 1997), the court carefully analyzed the admissibility of unadjudicated criminal conduct at the penalty phase of a capital case by looking to the Supreme Court's analysis of the fulfillment of a conditional fact for purposes of Federal Rule of Evidence 404(b). Quoting *Huddleston v. United States*, 485 U.S. 681, 689–90, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), the *Beckford* court explained that:

> because the acts at issue in this motion will be offered by the Government to prove the defendants' 'future dangerousness,' the unadjudicated criminal acts will be relevant 'only if the jury can reasonably conclude that the act occurred and that the defendant was the actor.' In other words, because the relevancy of the acts depends upon the fulfillment of a conditional fact, the Court will examine the evidence, before the penalty phase, to decide 'whether the jury could reasonably find the conditional fact ... by *a preponderance* of the evidence.

*Beckford*, 964 F.Supp. at 1004 (analyzing future dangerousness evidence for purposes of 21 U.S.C. section 848—Continuing Criminal Enterprise death penalty statute) (citations omitted; emphasis added). Other courts have followed *Beckford*'s analysis by concluding that even though each aggravating factor in a death penalty case must be proven beyond a reasonable doubt, each piece of evidence used to support the aggravating factor need not be proven beyond a reasonable doubt. *See United States v. Edelin*, 134 F.Supp.2d 59, 76 n. 18 (D.D.C.2001) (collecting cases); *United States v. Cooper*, 91 F.Supp.2d 90, 108 (D.D.C.2000) (holding that if government intends to use prior criminal behavior as aggravating factor per se, rather than as evidence of future dangerousness, it must prove such behavior beyond a reasonable doubt).

Perhaps because there are very few cases addressing the standards by which a court should assess the reliability of unadjudicated criminal conduct, the parties devoted only a few sentences to that issue in their briefs. However, the parties agreed that the Court should go beyond the *Beckford* preponderance-of-the-evidence standard by applying a modified version of the test used to assess motions for a judgment of acquittal under Federal Rule of Criminal Procedure 29. *See United States v. Hernandez*, 301 F.3d 886, 889 (8th Cir. 2002) (setting forth standard). Specifically, the parties urged the Court to assess the reliability of the Atlanta evidence by considering whether any reasonable jury could find Defendant guilty of the Atlanta murder beyond a reasonable doubt.[2] In

---

dicts were returned, and the Government's witnesses had traveled to Hammond, Indiana from Atlanta, Georgia to testify at that hearing. However, Defendant prevented that hearing from taking place as scheduled. In recognition of the costs incurred by the Government in arranging for their witnesses to travel from Atlanta the fist time, the Court eventually permitted the Government's witnesses to testify via videoconference. The videoconference allowed the Court to assess credibility just as well as if the witnesses had testified in person.

**2.** The parties also agreed the jury should be instructed that they could not consider the Atlanta murder in assessing Defendant's future dangerousness unless they determined the Government had proven Defendant responsible for the Atlanta murder beyond a reasonable doubt. As demonstrated by the excerpted jury instructions and verdict form below, the Court imposed that standard on the Government at the penalty phase.

his brief, Defendant argued that *Beckford's* preponderance standard may run afoul of the *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), principle that any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. *See Blakely v. Washington,* —— U.S. ——, ——, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004). Faced with the agreement of the parties regarding the standard they sought the Court to employ in assessing the reliability of the Atlanta evidence, the Court found it unnecessary to analyze the potential impact of *Apprendi*-related principles on *Beckford's* preponderance standard. Thus, at the conclusion of the reliability hearing, the Court determined that the evidence linking Defendant to the Atlanta murder was sufficient to allow a reasonable jury to find, beyond a reasonable doubt, that Defendant committed the Atlanta murder. Because the Court deemed the Atlanta evidence sufficiently reliable and also determined that the probative value of the Atlanta evidence was not outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury (under 18 U.S.C. section 3593(c)), the Court denied Defendant's motion in limine regarding the Atlanta evidence.

The penalty phase began on October 18, 2004. The Government's evidence of Defendant's involvement in the Atlanta murder was largely the same as it had been in the reliability hearing, although all witnesses testified in person.

The Court's penalty phase instructions were based on the very thorough pattern death penalty instructions prepared by the Eighth Circuit, but the Court added the following instruction to guide the jury in their determination of whether the Government had proven Defendant's involvement in the Atlanta murder beyond a reasonable doubt:

In support of the nonstatutory aggravating factor alleging that the "Defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to others, as demonstrated by proof of a continuing pattern of violence, the Defendant's low rehabilitative potential, and/or his mental condition," the Government has presented evidence to you regarding the 1998 homicide of Wanda "Wonder Woman" McNeil in Atlanta, Georgia.

To sustain its allegation that the Defendant murdered Wanda McNeil, the Government must prove the following propositions:

First, the Defendant acted unlawfully and with malice aforethought, either express or implied; and

Second, while so acting, the Defendant caused the death of Wanda McNeil.

If you find from your consideration of all the evidence that both of these propositions has been proved beyond a reasonable doubt, then you may consider the evidence related to Wanda McNeil's homicide in determining whether the Government has proven, beyond a reasonable doubt, the existence of the nonstatutory aggravating factor set forth at the top of this page.

If, on the other hand, you find from you consideration of all the evidence that either of these propositions has not been proved beyond a reasonable doubt, then you may not consider the evidence related to Wanda McNeil's homicide in determining whether the Government has proven, beyond a reasonable doubt, the existence of the above-listed nonstatutory aggravating factor.

I caution you, however, that even if you determine that the Government has proved beyond a reasonable doubt that

the Defendant murdered Wanda McNeil, you need not conclude that the Government has also proved, beyond a reasonable doubt, the existence of the above-listed nonstatutory aggravating factor. Similarly, if you determine that the Government has not proved beyond a reasonable doubt that the Defendant murdered Wanda McNeil, you may still conclude that the Government has proved, beyond a reasonable doubt, the existence of the above-listed nonstatutory aggravating factor.

Under Georgia law, "express malice" is that deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof. "Malice" shall be "implied" where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart.

To assist you in considering the evidence related to Wanda McNeil's homicide, the Court instructs you as follows.

The Government has alleged that the Defendant murdered Wanda McNeil, but the Defendant denies that allegation. The Government's allegation against the Defendant is not evidence against the Defendant and does not create any inference of guilt.

The Defendant is presumed to be innocent of the murder allegation. This presumption continues during the entire penalty phase and your deliberations at the conclusion of the penalty phase. It is not overcome unless from all the evidence in the penalty phase you are convinced beyond a reasonable doubt that the Defendant is guilty of the murder. The Government has the burden of proving the guilt of the Defendant beyond a reasonable doubt. This burden stays with the Government throughout the penalty phase. The Defendant is never required to prove his innocence or to produce any evidence at all.

You are to decide whether the testimony of each witness is truthful and accurate, in part, in whole, or not at all, as well as what weight, if any, you give to the testimony of each witness. In evaluating the testimony of any witness, you may consider, among other things:

— the witness's intelligence;

— the ability and opportunity the witness had to see, hear, or know the things that the witness testified about;

— the witness's memory;

— any interest, bias, or prejudice the witness may have;

— the manner of the witness while testifying; and

— the reasonableness of the witness's testimony in light of all the evidence in the case.

You should use common sense in weighing the evidence and consider the evidence in light of your own observations in life. In our lives, we often look at one fact and conclude from it that another fact exists. In law we call this "inference." A jury is allowed to make reasonable inferences. Any inferences you make must be reasonable and must be based on the evidence in the case.

Some of you have heard the phrases "circumstantial evidence" and "direct evidence." Direct evidence is the testimony of someone who claims to have personal knowledge of the commission of the crime which has been charged, such as an eyewitness. Circumstantial evidence is the proof of a series of facts which tend to show whether a defendant is guilty or not guilty. The law makes no distinction between the weight to be given either direct or circumstantial evidence. You should decide how much weight to give to any evidence. All the evidence in the penalty phase, including the circumstantial evidence, should be considered by you in reaching your de-

termination regarding the Government's allegation regarding Wanda McNeil's homicide.

You may find the testimony of one witness or a few witnesses more persuasive than the testimony of a larger number. You need not accept the testimony of the larger number of witnesses.

You have heard evidence that before the penalty phase, a witness made a statement that may be inconsistent with the witness's testimony here in court. If you find that it is inconsistent, you may consider the earlier statement in deciding the truthfulness and accuracy of that witness's testimony in the penalty phase.

Court's October 22, 2004, Tender of Penalty Phase Instructions, Instruction Number 11.

Additionally, at each appropriate place in the lengthy special verdict forms for the penalty phase, the Court provided the following space for the jury to record their findings regarding the Atlanta murder:

E.   That the Defendant is likely to commit criminal acts of violence in the future which would be a continuing and serious threat to others, as demonstrated by proof of a continuing pattern of violence, the Defendant's low rehabilitative potential, and/or his mental condition, and this fact or circumstance tends to support imposition of the death penalty

_____   PROVEN BEYOND A REASONABLE DOUBT

_____   NOT PROVEN

Subfactor:   That the Defendant murdered Wanda "Wonder Woman" McNeil in 1998.

_____   PROVEN BEYOND A REASONABLE DOUBT

_____   NOT PROVEN

Excerpt of Section IV of the Special Verdict Form (listing "Nonstatutory Aggravating Factors" alleged for each capital count).

On October 27, 2004, the jury returned death verdicts on each of the four capital counts. In each of the four places where they were asked to consider whether the Government had proven the nonstatutory aggravating factor of Defendant's future dangerousness, the jury indicated their unanimous conclusion that the factor had been proven beyond a reasonable doubt. Finally, in each of the four places where they were asked to determine whether Defendant had murdered Ms. McNeil, the jury indicated their unanimous conclusion that Defendant's unadjudicated criminal conduct had been proven beyond a reasonable doubt.

### Appendix "A"

### *SEALED ORDER*

This matter is before the Court on Defendant's Motion to Preclude Hearsay Evidence at Hearing on Reliability of Penalty Phase Evidence, filed under seal on July 23, 2004. For the reasons set forth below, the motion is **GRANTED**. Evidence related to unadjudicated prior acts arising from the alleged Atlanta incident shall be presented at the reliability hearing without reliance on summary, hearsay testimony. The Clerk is **ORDERED** to distribute copies of this order to the Government and counsel for Defendant, but shall then maintain this order in the sealed file.

*BACKGROUND*

The Court has agreed to conduct a 1–day hearing, immediately following a guilty verdict on any of the capital counts, to assess the reliability of the evidence supporting the Government's assertion that Defendant escaped punishment for a 1998 murder in Atlanta, Georgia. The Govern-

ment seeks to introduce evidence of that unadjudicated criminal conduct at the penalty phase of this case—to support the nonstatutory aggravating factor alleging that Defendant's propensity "to commit criminal acts of violence in the future ..." provides more reason for the jury to impose the death penalty. Amended Notice of Intent to Seek the Death Penalty, at 5, 6–7; *see also United States v. Beckford,* 964 F.Supp. 993, 996 (E.D.Va.1997) (analyzing propriety of permitting government to use unadjudicated criminal conduct to support nonstatutory aggravating factor of future dangerousness).

At the reliability hearing, the Government hopes to offer summary testimony from law enforcement witnesses to establish the reliability of its Atlanta-related evidence. According to the Government, the "summary witness will afford an overall view of this evidence for the defense and the Court ...." Sealed Govt. Resp. to Def.'s motion, at 2. The Government characterizes Defendant's motion to preclude hearsay evidence as "simply an attempt to improperly question and/or wear down a number of out-of-state witnesses who the defense knows will have difficulty being present and remaining present to attend hearings multiple times." *Id.*

Although Defendant's motion may be partially motivated by a desire to preview the Atlanta testimony and conduct a round of cross-examinations away from the jury, the motion has merit beyond Defendant's possible trial strategy.

*DISCUSSION*

The parties will soon submit briefs addressing the standards by which the Court should assess the admissibility and reliability of the Atlanta evidence, and the Court need not address that issue here. At this point, however, it is sufficient to acknowledge that evidence of unadjudicated criminal conduct brings with it an "in-creased danger of unfair prejudice"—a risk the Court will bear in mind when "weighing the risk of prejudice against the probative value of such evidence," as required by 18 U.S.C. section 3593(c). *Beckford,* 964 F.Supp. at 1003 (analyzing standards for reliability under 21 U.S.C. section 848(j)'s "substantially outweighed by" formulation for determining unfair prejudice sufficient to bar introduction of information at penalty phase). In making the threshold reliability determination, the Court must "prevent the less stringent concept of relevance from predominating over the cardinal principle of reliability." *Id.* at 1000.

To accomplish this, the Court must bar the use of summary, hearsay testimony for two reasons. First, a consideration of the "reliability" of the Government's Atlanta witnesses *necessarily includes* an assessment of their credibility. "The partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (quoting 3A J. Wigmore, Evidence section 940, p. 775 (Chadbourn rev. 1970)). "Proof of bias is almost always relevant because" the fact-finder "has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Aside from a witness' bias or motive to fabricate, an examination of a witness' credibility also includes an assessment of whether the witness' memory is simply faulty. *See Davis,* 415 U.S. at 316 n. 4, 94 S.Ct. 1105.

The Court cannot analyze these components of credibility if the Government's witnesses' accounts are filtered through a law enforcement official who summarizes their statements. Before the Court allows

the jury to hear the Government's allegation that Defendant participated in a murder six years ago, the Court must have a direct opportunity to observe each witness and assess his/her credibility. When reliability is at issue and the fairness of Defendant's penalty phase is at stake, there can be no substitute for live testimony from direct occurrence witnesses.

Second, the Sixth Amendment may prohibit the use of testimonial hearsay at the reliability hearing. Almost six months ago, the Supreme Court held that, under the Sixth Amendment's Confrontation Clause, out-of-court statements are to be excluded unless the witness is found to be unavailable and the defense was provided a prior opportunity to cross-examine that person. *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004). Not surprisingly, this Court was unable to locate any reported decisions analyzing whether *Crawford*'s interpretation of the Confrontation Clause applies to reliability hearings used to screen the admissibility of information offered in the penalty phases of capital cases. However, because the "primary interest secured by" the Confrontation Clause is cross-examination, and because cross-examination "is the principal means by which the believability of a witness and the truth

of testimony are tested," the Court finds it highly unlikely that *Crawford*'s requirements would not apply to reliability hearings. *Davis,* 415 U.S. at 315–16, 94 S.Ct. 1105. After all, the sole purpose of such hearings is to gauge the admissibility of information the government hopes to use to convince a jury to impose the death penalty. Although preliminary to the penalty phase, the stakes in a reliability hearing are nearly as high.[1]

Courts are still grappling with the distinction *Crawford* created between "testimonial" and "nontestimonial" hearsay. *See United States v. Saget,* 377 F.3d 223 (2nd Cir.2004); *United States v. McClain,* 377 F.3d 219 (2nd Cir.2004). While *Crawford* teaches that "police interrogations" are unquestionably "testimonial" for purposes its rule, the Supreme Court has not resolved whether statements made to police officers by occurrence witnesses are testimonial statements.[2] True, the *Crawford* Court did note that an "accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not," but the question of whether such statements are testimonial is not yet resolved. Because of this uncertainty, the Court is unwilling to allow the Government to rely on hearsay statements

---

1. Nor can it reasonably be argued that *Crawford* cannot apply to reliability hearings because the Federal Rules of Evidence do not apply to the proceeding for which the reliability hearing is a precursor: the penalty phase. Congress's decision in 18 U.S.C. section 3593(c) to make the Federal Rules of Evidence inapplicable to the penalty phase cannot alter the bedrock Confrontation Clause principles identified by the *Crawford* Court.

2. Defendant's memorandum in support of the instant motion misquotes *Crawford* in a significant way. At unnumbered page three of that brief, Defendant writes: "*Crawford* further stated that this included 'statements taken by

police officers in the course of investigations (which) are also testimonial under even a narrow standard.'" Defendant substituted the word "investigations" for "interrogations" and, by so doing, significantly altered the meaning. *See Crawford,* 124 S.Ct. at 1365 n. 4 (explaining Court's use of term "interrogation" includes situation in which a *defendant* knowingly gives responses to "structured police questioning") (emphasis added).

The Court interprets Defendant's failure to properly quote *Crawford* as an unintentional mistake, but cautions defense counsel that self-serving errors, if repeated, will undercut counsel's credibility with the Court.

that run the risk of violating Defendant's Confrontation Clause rights—especially when the Government has not even attempted to show, as further required by *Crawford,* that the Atlanta witnesses would be "unavailable" for the reliability hearing.

*CONCLUSION*

For the reasons set forth above, Defendant's Motion to Preclude Hearsay Evidence at Hearing on Reliability of Penalty Phase Evidence is **GRANTED**. Evidence related to unadjudicated prior acts arising from the alleged Atlanta incident shall be presented at the reliability hearing without reliance on summary, hearsay testimony.

**Appendix "B"**

***SEALED ORDER***

This matter is before the Court on: (1) the Government's request (in its August 31, 2004, sealed statement of law related to the possible reliability hearing) for reconsideration of the Court's sealed August 30, 2004, order prohibiting summary, hearsay testimony at the possible reliability hearing; and (2) the Government's Response to Court's Inquiry as to Standards to Assess Admissibility and Reliability of Atlanta Evidence (containing second request for reconsideration), filed under seal on September 17, 2004. For the reasons set forth below, the requests are **DENIED**. Defendant is **ORDERED** to file, by 1:30 p.m. on September 23, 2004, a sealed brief regarding the standards by which the Court should analyze whether to permit the Government to present to the jury the evidence/information related to the alleged Atlanta murder. The Clerk is ORDERED to distribute copies of this order to the Government and counsel for Defendant, but shall then maintain this order in the sealed file.

The Government's requests for reconsideration of the Court's decisions to: (1) bar summary, hearsay testimony from the possible reliability hearing; and (2) conduct a reliability hearing with live witnesses, are **DENIED.** The reliability hearing will go forward, if necessary, as previously scheduled and described by the Court. The Court will not engage in an assessment by proxy of the reliability of the Atlanta evidence. Summary, hearsay testimony from law enforcement officers is inadequate to permit the Court to determine whether the Atlanta evidence is sufficiently reliable for the jury to consider during the possible penalty phase. Especially where, as here, there are inherent problems with the Government's Atlanta evidence (including statements made by the victim that may exculpate Defendant and possible problems with other occurrence-witness testimony), the Court must have an opportunity to assess the credibility of the Atlanta witnesses—no matter what, respectfully, the *Beckford* court may have gleaned from the Supreme Court's discussion of Federal Rules of Evidence 404(b) and 104(b) in *Huddleston v. United States,* 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988). *See United States v. Beckford,* 964 F.Supp. 993, 1004 n. 11 (E.D.Va.1997).

Additionally, the Court views as somewhat suspect the Government's blanket assertion, in its brief filed today, that "no other [c]ourt has ever required the government to ... [present] live witnesses and actual evidence" in determining whether "the sentencing jury should hear the same witnesses and evidence." Govt's 9/17/04 Br., at 1; *Id.* at 3 ("... every other [c]ourt ruling on reliability, determined admissibility (no matter what the standard used) **by way of proffer or summary witness"**) (emphasis in original). The court in *United States v. Gilbert,* 120 F.Supp.2d 147, 153–54 (D.Mass.2000), squarely held that it would assess unadjudicated criminal conduct that the government sought to intro-

duce at the penalty phase by "consider[ing] a *voir dire* of the witness" (a victim of the defendant's attempted murder), "at which [time] the reliability of his testimony can be assessed." *Gilbert,* 120 F.Supp.2d at 153. The *Gilbert* court also held that it would assess the reliability of another alleged unadjudicated criminal act by possibly conducting a *voir dire* of a *different* government witness. *Id.* at 154. Whether the *Gilbert* court eventually found it necessary to conduct those witness examinations is unclear, but the Government's brief does not acknowledge *Gilbert* and leaves the Court wondering whether the Government's bold assertion about this Court's plans for the reliability hearing are accurate. Plus, in another case the Government's brief does not acknowledge, the court signals a possible willingness to hold an evidentiary hearing to assess the reliability of unadjudicated criminal conduct in a death penalty case. *See Cooper,* 91 F.Supp.2d 90, 108 (D.D.C.2000) (after concluding that government would have to prove unadjudicated criminal conduct beyond a reasonable doubt before that evidence could be submitted to penalty-phase jury, court states that it would "hold a hearing on April 18, 2000 at 10:30 a.m. to consider whether and to what extent the unadjudicated conduct and obstruction of justice evidence should be admitted .... "). Finally, the Government's blanket assertion that no other court has required live witnesses at a reliability hearing does not acknowledge the prospect that—as set forth in a case the Government *does* cite in today's brief—"the taking of testimony" may be "necessary" in a reliability hearing. *See United States v. Foster,* No. CCB–02–0410, 2004 WL 903921, at *1 (D.Md. Apr.9, 2004). In the end, the Court is confident it is on firm legal ground by requiring live witnesses at the reliability hearing.

Nor is the Court persuaded by the Government's pre-*Crawford v. Washington,* 124 S.Ct. 1354 (2004), cases that dispense with a reliability hearing by relying solely on written proffers of evidence. As explained in the Court's August 30, 2004, sealed order, *Crawford*'s interpretation of the Confrontation Clause casts serious doubt on constitutionality of allowing the Government to present summary, hearsay testimony at the possible reliability hearing—especially when the Government has not even attempted to show that the Atlanta witnesses are "unavailable" for purposes of either *Crawford* or Federal Rule of Evidence 804. *See United States v. Hite,* 364 F.3d 874, 882 (7th Cir.2004) (affirming district court's decision to bar admission of testimony under Rule 804 where proponent of statement could not satisfy test requiring "a good-faith effort" to "obtain the declarant's presence at trial"). The Court's concern with protecting Defendant's Confrontation Clause rights applies also to the prospect of simply allowing the Government to submit documentary evidence inculpating Defendant in the Atlanta murder. *See* Govt's 8/31/04 Br. (citing *United States v. O'Driscoll,* 250 F.Supp.2d 432 (M.D.Pa.2002) as support for position that, as in *O'Driscoll,* reliability of unadjudicated criminal conduct can be assessed by mere submission of document-based evidentiary proffer). *Crawford* raises the prospect that statements made to police officers by occurrence witnesses are "testimonial" and cannot be admitted against a defendant unless the witness is unavailable and the defendant was provided a prior opportunity to cross-examine the witness. In the absence of an agreement from Defendant that such statements can be admitted at the reliability hearing *without* adherence to Crawford's requirements, as well as the requirements in the Federal Rules of Evidence, the Court will not permit it.[1]

1. The Court cautions the parties that *Crawford* did not alter the landscape for the admissibility of all hearsay. Nontestimonial hearsay

Now that the Court has made it clear that the possible reliability hearing will go forward as planned, the Court requires Defendant to address the standards by which the Court should assess the admissibility at the penalty phase of the Atlanta evidence/information. The Court expected both parties to address that issue in their sealed briefs regarding the "law" for the reliability hearing. However, neither side took that opportunity. The Government used their brief to request reconsideration of the Court's rule prohibiting summary, hearsay testimony, and Defendant used his brief to respond to the Government's motion for reconsideration. The Government's brief filed today addresses the standards the Court should use in assessing reliability, and the Court requires Defendant to do the same. He shall file his sealed brief by 1:30 p.m. on September 23, 2004.

In the end, this Court's analysis is informed not just by the inherent requirements of a reliability hearing and the strictures of the Confrontation Clause, but also by the grave risk of injustice involved in presenting untested and highly prejudicial evidence to a penalty-phase jury. The Court will not gamble with Defendant's right to a fair and impartial jury in a capital case by allowing what may be questionable evidence/information of possible unadjudicated criminal acts to reach the jury in the penalty phase without first testing the reliability of that information through live testimony. To require any less would be to risk a mistrial or a defective death verdict in this case through the introduction of possibly faulty yet inflammatory testimony. Justice demands more.

---

does not fall within *Crawford*'s purview. Nor would testimonial hearsay offered by a defendant. *See White*, 364 F.3d at 833 n. 12 ("because the hearsay statements concerned were offered by the *defense* and not the prosecution, the Sixth Amendment is not implicated and the Supreme Court's decision in *Crawford* would not change our reasoning [that the testimony was properly excluded after the proponent's failure to demonstrate unavailability under Rule 804]") (emphasis in original).